FEDERAL DEPOSIT INSURANCE
CORP., Plaintiff/Appellee,

v.

Bobby MORGAN, Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Knoxville.

Dec. 16, 1986.

Application for Permission to Appeal
Denied by Supreme Court
April 6, 1987.

David B. Maxwell, Sevierville, for defendant/appellant.

Sally C. Bradley and Michael Tranum, Knoxville, for plaintiff/appellee.

TOMLIN, Presiding Judge, Western Section.

The Federal Deposit Insurance Corporation (FDIC), as a substituted plaintiff,[1] was awarded a judgment against Bobby Morgan in the Chancery Court of Knox County in a suit seeking to recover the balance remaining on a promissory note after collateral for the note had been sold pursuant

---

1. The suit was initially brought by First Tennessee Bank against Aviation Management, Inc., the maker of the note, and Patrick Boles and Bobby Morgan, its chairman and president respectively. Morgan also signed the note as a personal guarantor. The FDIC in its corporate capacity later acquired the note from First Tennessee Bank, which had assumed the note following the failure of United American Bank, the original maker of the loan. It appears that the incorporation of Aviation Management, Inc. was never perfected. Thus, the suit proceeded against Boles and Morgan individually.

to a security agreement. The chancellor held that the sale of the collateral was not conducted in a commercially reasonable manner and ruled initially that FDIC was not entitled to a judgment for any deficiency. Upon rehearing, the court held that it had failed to correctly apply Tennessee law in its earlier ruling and modified its previous judgment. After allowing defendant Morgan a credit in the amount of $40,000 representing damages resulting to him from the commercially unreasonable sale, FDIC was given a deficiency judgment against Morgan in the amount of $155,-898.98.

FDIC has not appealed the ruling of the trial court that the collateral was sold in a commercially unreasonable manner. The only issue presented by defendant's appeal is whether or not the chancellor erred in awarding the deficiency judgment to FDIC. We hold that he did not and affirm.

The facts are not in dispute. United American Bank of Knoxville made a loan to Aviation Management, Inc. in the amount of $209,000 to finance the purchase of a 1981 Piper Aerostar Airplane, which was pledged as collateral for the loan. The plane was later sold to a third party but Aviation Management, along with Morgan, an officer and guarantor of the note, was never released from the debt. Later the airplane was stolen from an airport in Knoxville and was subsequently recovered by Federal Customs officials in Mississippi in a slightly damaged condition after it had been used in drug smuggling.

Inasmuch as the note was in default, First Tennessee, the assuming bank, caused the plane to be sold by a local aircraft dealer pursuant to a sealed bid for $77,500.00. The proceeds from the sale were not sufficient to satisfy the balance of the indebtedness on the note and this action was initiated. Boles was subsequently dismissed from the suit as a defendant after FDIC was unable to obtain service of process upon him.

Defendant contends that when collateral under a security agreement has been disposed of in a commercially unreasonable manner, a rebuttable presumption is raised that the value of the collateral equaled the indebtedness assumed, thereby extinguishing the indebtedness unless the secured party (FDIC) rebuts the presumption. *See United States v. Conrad Publishing Co.,* 589 F.2d 949, 955 (8th Cir.1978). Defendant further contends that FDIC did not rebut this presumption in that it failed to introduce any proof as to the true value of the collateral so as to show that the value of the collateral in fact was less than the amount of the indebtedness.

■ The chancellor held that the true value of the collateral had been established by the evidence and therefore the FDIC had rebutted the presumption of equal value. In so doing he applied Tennessee law and stated as follows:

> Under the evidence we are now convinced that we did not reach a correct decision. The law in Tennessee is that in the event a creditor foreclosing upon a security interest in collateral conducts a commercially unreasonable sale that there is a presumption the debtor is damaged to the extent of the deficiency claimed, unless the evidence shows otherwise.
>
> In some states the fact of a commercial unreasonable sale results in extinguishment of any deficiency whatsoever. This, as we have just observed, is not the rule in Tennessee.
>
> . . . .
>
> In this case the evidence establishes the collateral to be worth $130,000.00, less the cost of repair which we find to be $12,500, or $117,500.

■ The chancellor correctly interpreted the law in this state but in a case where the FDIC is acting in its corporate capacity, as it was in this case, the federal common law governs. *See Federal Deposit Insurance Corp. v. Wood,* 758 F.2d 156 (6th Cir.1985). However, the result remains the same because the rebuttable presumption rule adopted by the courts of this state coincides with the rule adopted by the federal courts. The court in *United States v. Willis,* 593 F.2d 247 (6th Cir.1979) held:

We have adopted as the rule in this case that where the secured party has disposed of the collateral in a commercially unreasonable manner, it rests with him to carry the burden of proof in rebutting the presumption that the fair market value of the assets equalled the indebtedness secured.

*Id.* at 261. *Accord Federal Deposit Insurance Corp. v. Rodenberg,* 571 F.Supp. 455 (D.Md.1983).

In its application of the rule, the *Willis* court further stated:

[B]efore recovery is permitted, the secured party must 1) establish the fair market value of the collateral and, thereby, 2) rebut the presumption that the value of the collateral equalled the indebtedness secured.

*Id.* at 260.

In the case before us, Patrick Boles, who signed the original note as an officer of Aviation Management, testified on behalf of defendant Morgan. He was qualified as an expert, as one who had been in the aircraft business for some ten years and who bought and sold some thirty aircraft. He had been an owner and operator of an aircraft dealership which was involved in aircraft sales, flight training and maintenance. Boles further testified that he had flown the aircraft in question. In his opinion, the plane had a value of $140,000 to $150,000 when in A–1 condition. He also testified that it would cost between $10,000 and $15,000 to make the aircraft airworthy.

■ Relying upon the case of *Brown v. Hows,* 163 Tenn. 138, 40 S.W.2d 1017, 1022 (1931), defendant contends that as this proof was introduced by him, FDIC cannot rely upon this evidence to rebut the presumption of equal value but should have introduced evidence itself as to the true value of the collateral. In our opinion, this case does not support defendant's contention.

■ Defendant's assertion that Boles' testimony amounted to merely an estimate of the value in order to show the sale was commercially unreasonable and could not be considered as conclusive evidence as to the actual value of the collateral is likewise unfounded. Regardless of the motive and purpose of defendant's presenting Boles as a witness, he was qualified as an expert and testified to the point as to the fair market value of the aircraft and as to the reasonable costs of repairs in order to place it in an airworthy condition. In *Willis, supra,* affirming the judgment of the trial court denying recovery by the government, after stating the rule quoted above, the court also said:

Had sufficient evidence been adduced at trial, whether by appellant [the government] or defendants, to establish the fair market value of the assets in question, this court would not hesitate to permit appellant any benefit that it could derive therefrom. However, the fair market value of these assets was not established by the evidence of either party at trial.

*Id.* at 261.

Applying these principles to the case before us, the chancellor had competent evidence before him that rebutted the presumption of equal value. Accordingly, the decree of the chancellor is affirmed. Costs in this cause are taxed to defendant, for which execution may issue, if necessary.

HIGHERS and FARMER, JJ., concur.